**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA**

Press and Journal, Inc.,                                    :
                                                            :
                                    Plaintiff,              :
                                                            :
        vs.                                                 :        Civil Action No. _____
                                                            :
Borough of Middletown,                                      :
                                                            :
                                    Defendant.              :

## COMPLAINT

Plaintiff Press and Journal, Inc., by undersigned counsel, Mette, Evans & Woodside, seeks a permanent injunction to prevent the Borough of Middletown from terminating a pre-existing commercial relationship with Plaintiff for Plaintiff's exercise of rights protected under the First Amendment.  Plaintiff further seeks protection against future commercial discrimination by the Borough of Middletown for Plaintiff's exercise of such rights.

## I.     Parties

1.      Plaintiff Press and Journal, Inc. ("Plaintiff") is a Pennsylvania corporation maintaining its principal place of business at 20 South Union Street, Borough of Middletown, Dauphin County, Pennsylvania.  Plaintiff is the publisher of the Middletown Press & Journal ("Press & Journal"), a newspaper of general circulation in Dauphin County, Pennsylvania.

2.  Defendant Borough of Middletown (the "Borough") is a political subdivision of the Commonwealth of Pennsylvania that maintains its principal place of business at 60 West Emaus Street, Borough of Middletown, Dauphin County, Pennsylvania.

## II.  Jurisdiction & Venue

3.  Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343, conferring original jurisdiction upon the district courts of the United States for civil actions authorized by law to be commenced by any person to recover damages under any Act of Congress.  This suit is authorized pursuant to 42 U.S.C. § 1983.  An award of costs and attorneys fees is authorized pursuant to 42 U.S.C. § 1988.

4.  Venue is proper in this Court under 28 U.S.C. § 1391(b) because the Middle District of Pennsylvania is the district in which a substantial part of the events giving rise to the claim occurred.

5.  This action includes claims for equitable relief and is therefore not subject to arbitration.

## III.  Facts

6.  The assertions of the foregoing paragraphs are incorporated herein by reference.

### A.    A Century-Long Commercial Relationship

7.     The Borough of Middletown has historically maintained a commercial relationship with Plaintiff for the publication of notices in the Press & Journal.

8.     The duration of the commercial relationship between the Borough and Press & Journal is so long that Plaintiff believes it to have lasted for more than one hundred years—or at least as long as Pennsylvania law has required the publication of notices of matters affecting the Borough's government.

9.     The Borough has placed for advertisement with the Press & Journal such things as notices of meetings of Borough Council, notices of meetings of the Middletown Zoning Hearing Board, and other notices required by law to be published in a newspaper of general circulation in Dauphin County.[1]

10.    When placing public notices in the Press & Journal, the Borough has always paid Plaintiff as an independent contractor.

11.    The Press & Journal is a member of the private press and wholly independent from the control and direction of the Borough in its business operations.

---

[1] *See, e.g.*, 8 Pa. C.S. § 3301.2 (requiring advertisement of notices of proposed ordinances).

3

12.   In the ten-year period from June 1, 2008 through May 31, 2018, the Borough placed two hundred seven (207) legal ads for publication in the Press & Journal.

13.   The Borough has also placed with the Press & Journal advertisements for events important to the public such as tree removal, hydrant flushing, leaf collection and the National Night Out.

14.   In June of 2018, the Borough abruptly ended all advertising with the Press & Journal.

15.   Upon learning of the Borough's action, Plaintiff inquired of the Borough the reason for the termination of the century-long commercial relationship.

**B.     The Borough's Retaliatory Termination Letter**

16.   By letter dated July 17, 2018 ("Termination Letter"), James H. Curry, III ("Curry"), Mayor of the Borough of Middletown, along with Damon Suglia ("Suglia"), Jenny Miller ("Miller"), Dawn Knull ("Knull"), Angela Lloyd ("Lloyd"), Ian Reddinger ("Reddinger") and Mike Woodworth ("Woodworth"), all members of Borough Council, responded to Plaintiff's inquiry and confirmed that the Borough was terminating further commercial relationship with Plaintiff and ceasing further advertising in the Press & Journal.  A copy of the Termination Letter is attached hereto as Exhibit A.

17.    The Termination Letter stated that the Borough's decision to terminate its placement of legal notices for publication with the Press & Journal was motivated by the Press & Journal's reporting and/or editorializing upon the following subjects:

- The Elks Theatre
- National Night Out
- Police Discipline
- Borough Ordinances Affecting Student Housing
- Litigation Against Suez and McNees, Wallace & Nurick

See Exhibit A.

18.    The Termination Letter also criticized the Press & Journal's "local campaign coverage" and additionally suggested that the Press & Journal "help[ed] finance select campaigns[.]"  *Id.*

19.    All news and editorial topics identified in the Termination Letter are matters of public concern in the Borough of Middletown.

## C.    The Termination Letter as a Statute, Ordinance, Regulation, Custom, or Usage

20.    Under Pennsylvania law, the governmental and commercial affairs of a borough are governed by a council and mayor.

21.    In the Borough of Middletown, Borough Council and the Mayor are the highest policy-making officials.  *See* 8 Pa. C.S. § 3301.1 *et seq.*

22.   Official ordinances, resolutions and motions require the approval of a majority of Borough Council.[2]

23.   The Termination Letter was hand-signed by six of the seven current members of Borough Council and the Mayor, to wit, Suglia, Knull, Miller, Lloyd, Reddinger, Woodworth and Curry, a group constituting a veto-proof majority of Borough Council and the Mayor himself.

24.   The termination of the commercial relationship memorialized in the Termination Letter has been, and is currently being, followed by all Borough officials, agents and employees as a legal mandate.

25.   The Borough's termination of further commercial relationship with Plaintiff is not within the ambit of legitimate legislative activity.

26.   Rather, the Borough's termination of this relationship was a retaliatory act specifically targeting Plaintiff for its exercise of its rights under the First Amendment to the exclusion of all other entities or persons who might wish to continue or even commence a commercial relationship with the Borough.

27.   Further, neither the Termination Letter nor the act it memorializes was considered or voted upon at a public meeting, instead being approved by a veto-proof majority of Borough Council and the Mayor outside any public meeting.

---

[2]  Pennsylvania law allows for a mayoral veto, which can be overridden by a new vote of council achieving a majority plus one additional vote.  *See* 8 Pa. C.S. § 3301.3.

**D.     The Borough Has Retaliated Against Plaintiff Because of Content and Viewpoints Contained in the Press & Journal**

28.     The Termination Letter characterizes the reporting and editorials of the Press & Journal as "detrimental to the efforts and initiatives of the Borough" and as containing "disheartening and demoralizing instances of distasteful sensationalism, misrepresentation of information and statements, unfounded speculation, questionable sourcing and observable bias[.]"  Exhibit A.

29.     Defendant's act of terminating the pre-existing commercial relationship with Plaintiff was motivated by opposition both to the content and viewpoints—actual or perceived—contained in the Press & Journal.

30.     The Borough's refusal to continue its commercial relationship with the Press & Journal because of the content and viewpoints published in the pages of the newspaper violates Plaintiff's First Amendments rights to freedom of speech and press.

**E.     The Press & Journal Sent to Publishing Purgatory**

31.     The final paragraph of the Termination Letter states that the Borough would consider resuming the commercial relationship with Plaintiff if the Press & Journal would "responsibly and professionally report" on matters of Borough governance.

32.     The Borough's stated standards of proper reporting—unknown in law and unconstitutionally vague—condition Plaintiff's further commercial

relationship with the Borough upon the content of, and viewpoints expressed in, the Press & Journal.

33.     The Borough's attempt to condition a continued commercial relationship upon a change in the Press & Journal's content and viewpoints to the Borough's liking is a naked attempt by a unit of government to coerce a member of the free press to provide more favorable coverage of the Borough's activities.

**F.     Plaintiff's Notice to Defendant of Constitutional Violations**

34.     At a public meeting of Borough Council held on September 18, 2018 which was attended by Suglia, Knull, Miller, Lloyd, Reddinger, Woodworth and Curry, counsel for Plaintiff addressed all such individuals by reading, with minor alterations, a letter ("Warning Letter"), a copy of which is attached as Exhibit B.

35.     The Warning Letter specifically identified the unconstitutional actions of the named members of council and the Mayor and cited the decision of the United States Supreme Court in *Board of County Commissioners of Wabaunsee County v. Umbehr*.[3]

36.     In *Umbehr* the Supreme Court ruled that a government body cannot terminate a commercial relationship with an independent contractor because of such contractor's exercise of constitutional rights protected under the First Amendment.

---

[3]  518 U.S. 668 (1996).

37.     After reading the Warning Letter, counsel for Plaintiff provided a copy of the same to all members of Borough Council and the Mayor.

38.     Upon receiving his copy of the Warning Letter, Mayor Curry contemptuously ripped it in half and threw the pieces on Council table.

**G.     Required Remedies**

39.     Plaintiff has no adequate remedy at law to prevent the ongoing burden to its rights to free speech, press and association arising from the Borough's termination of its pre-existing commercial relationship with Plaintiff because of Plaintiff's exercise of such rights.

40.     Additionally, Plaintiff has lost actual commercial opportunity to provide publishing services to the Borough because of the Borough's termination of its pre-existing commercial relationship with Plaintiff for Plaintiff's exercise of such rights.

**FIRST CAUSE OF ACTION**
**PERMANENT INJUNCTION OF BOROUGH'S VIEWPOINT**
**DISCRIMINATION IN VIOLATION OF PLAINTIFF'S FIRST**
**AMENDMENT RIGHTS TO SPEECH AND PRESS**
**(42 U.S.C. § 1983)**

41.     The averments of the foregoing paragraphs are incorporated herein by reference.

9

42.    The Termination Letter states that the Borough ended its century-long commercial relationship with Plaintiff because of viewpoints expressed by the Press & Journal in news reporting and editorials.

43.    As a direct and proximate result of the Borough's termination of this pre-existing commercial relationship for such reason, Plaintiff's rights to speech, press and other expressive conduct have been substantially burdened and chilled.

44.    Plaintiff is suffering an ongoing, substantial burden to its rights to free speech, press and other expressive conduct as a result of the Borough's refusal to continue its commercial relationship with Plaintiff because of the viewpoints expressed in the Press & Journal.

45.    The  Borough is unconstitutionally conditioning the award of future contracts for publication services upon Plaintiff changing viewpoints expressed in its news reports and editorials.

WHEREFORE, Plaintiff prays this Court to grant relief as follows,

1)    PERMANENTLY ENJOIN the Borough of Middletown, its mayor, councilors, officials, agents and employees, from discriminating against Plaintiff in the awarding of contracts because of Plaintiff's past, present or future adoption, maintenance, publication or expression of any viewpoint of any nature, whether its own or of another as protected under the First Amendment;

2)      ORDER the Borough and its mayor, councilors, officials, agents and employees to:

a)      Review and deliberate upon the awarding of contracts for publishing services to independent contractors only at formally noticed and called meetings of Borough Council open to the public, and

b)      Award contracts for publishing services to independent contractors only upon articulable, neutral criteria contemporaneously announced upon award thereof;

3)      RETAIN jurisdiction to review and enforce violations of this Court's order;

4)      AWARD attorneys fees and costs to Plaintiff for vindicating its constitutional rights in this Court; and

5)      GRANT whatsoever other relief as is just and equitable.

## SECOND CAUSE OF ACTION
## PERMANENT INJUNCTION OF THE BOROUGH'S CONTENT DISCRIMINATION IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHTS TO SPEECH AND PRESS
### (42 U.S.C. § 1983)

46.     The averments of the foregoing paragraphs are incorporated herein by reference.

47. The Borough in the Termination Letter declared that it ended its century-long commercial relationship with Plaintiff because of the content of both news reporting and editorials in the Press & Journal.

48. As a direct and proximate result of the Borough's termination of this pre-existing commercial relationship for such reason, Plaintiff's rights to speech, press and other expressive conduct have been substantially burdened and chilled.

49. Plaintiff is suffering an ongoing, substantial burden to its rights to free speech, press and other expressive conduct as a result of the Borough's refusal to continue its commercial relationship with Plaintiff because of news and editorial content in the Press & Journal.

50. The Borough is unconstitutionally conditioning the award of future contracts for publication services upon Plaintiff changing the content of its news reports and editorials.

WHEREFORE, Plaintiff prays this Court to grant relief as follows,

1) PERMANENTLY ENJOIN the Borough of Middletown and its mayor, councilors, officials, agents and employees, from discriminating against Plaintiff in the award of contracts because of Plaintiff's past, present or future adoption, maintenance, publication or expression of any content of any nature, whether its own or of another as protected under the First Amendment;

12

2)      ORDER the Borough and its mayor, councilors, officials, agents and employees to:

a)      Review and deliberate upon the awarding of contracts for publishing services to independent contractors only at formally noticed and called meetings of Borough Council open to the public, and

b)      Award contracts for publishing services to independent contractors only upon articulable, neutral criteria contemporaneously announced upon award thereof;

3)      RETAIN jurisdiction to review and enforce violations of this Court's order;

4)      AWARD attorneys fees and costs to Plaintiff for vindicating its constitutional rights in this Court; and

5)      GRANT whatsoever other relief as is just and equitable.

## THIRD CAUSE OF ACTION
## PERMANENT INJUNCTION OF BOROUGH'S DISCRIMINATION IN VIOLATION OF PLAINTIFF'S FIRST AMENDMENT RIGHT TO FREE ASSOCIATION
## (42 U.S.C. § 1983)

51.      The averments of the foregoing paragraphs are incorporated herein by reference.

13

52.     The Borough in the Termination Letter stated that it ended its century-long commercial relationship with Plaintiff because *inter alia* the Press & Journal allegedly "help[ed] finance select campaigns[.]"  See Exhibit A.

53.     As a direct and proximate result of the Borough's termination of this pre-existing commercial relationship for such reason, Plaintiff's right to political association has been substantially burdened and chilled.

54.     Plaintiff is suffering ongoing harm in the nature of suppressed association rights, because the Borough is refusing to continue is commercial relationship with Plaintiff for the placement of public notices as a result of Plaintiff's perceived "financ[ing of] select campaign[s]" thereby imposing a substantial burden on Plaintiff's exercise of such right.[4]

55.     The  Borough is further conditioning further commercial relationship upon Plaintiff foregoing financial support of any political campaign disfavored by the Borough.

WHEREFORE, Plaintiff prays this Court to grant relief as follows,

1)     PERMANENTLY ENJOIN the Borough of Middletown and its mayor, councilors, officials, agents and employees, from discriminating against

---

[4] Plaintiff did not in fact "finance" any political campaign as the Termination Letter alleges, but Defendant is threatening Plaintiff's continued commercial opportunity with the Borough if Plaintiff should in fact support any political campaign—a violation of Plaintiff's associational rights.

14

Plaintiff in the award of contracts because of Plaintiff's past, present or future exercise of its right to free association as protected under the First Amendment;

2)      ORDER the Borough and its mayor, councilors, officials, agents and employees to:

a)      Review and deliberate upon the awarding of contracts for publishing services to independent contractors only at formally noticed and called meetings of Borough Council open to the public, and

b)      Award contracts for publishing services to independent contractors only upon articulable, neutral criteria contemporaneously announced upon award thereof;

3)      RETAIN jurisdiction to review and enforce violations of this Court's order;

4)      AWARD attorneys fees and costs to Plaintiff for vindicating its constitutional rights in this Court; and

5)      GRANT whatsoever other relief as is just and equitable.

Respectfully submitted,

**METTE, EVANS & WOODSIDE**

/s/ Aaron D. Martin

By: _____

Aaron D. Martin
Pa. Atty. I.D. No. 76441
Michael D. Reed
Pa. Atty. I.D. No. 35193
Veronica L. Boyer
Pa. Atty. I.D. No. 310095
3401 North Front Street
Post Office Box 5950
Harrisburg, PA 17110
(717) 232-5000 (phone)
(717) 236-1816 (fax)
admartin@mette.com
mdreed@mette.com
vlboyer@mette.com

*Attorneys for Plaintiff,*
*Press and Journal, Inc.*

Date: October 23, 2018.

1280278v1