# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **PRESS AND JOURNAL, INC.,** | : | CIVIL ACTION NO. 1:18-CV-2064 |
| Plaintiff | : | (Chief Judge Conner) |
| v. | : | |
| **BOROUGH OF MIDDLETOWN,** | : | |
| Defendant | : | |

## MEMORANDUM

Plaintiff Press and Journal, Inc. ("plaintiff") filed this action alleging First Amendment violations by defendant Borough of Middletown (the "Borough"). The Borough moved to dismiss plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b). (Doc. 12). We will deny the Borough's motion to the extent it is grounded in Rule 12(b)(6).

## I.      Factual Background & Procedural History

Plaintiff is an independent member of the private press that publishes the *Middletown Press & Journal* (the "Journal"), a newspaper of general circulation in Dauphin County, Pennsylvania. (Doc. 1 ¶¶ 1, 11). According to plaintiff, for over 100 years the Borough has advertised in the Journal, placing notices for meetings of Borough council and the local zoning hearing board, advertisements for public events like hydrant flushing and leaf collection, and "other notices required by law to be published in a newspaper of general circulation." (Id. ¶¶ 8-9, 13). In the ten-year period from June 2008 to May 2018, the Borough allegedly ran 207 such legal advertisements in the Journal. (Id. ¶ 12).

The Borough "abruptly" ended all advertising with the Journal in June 2018. (Id. ¶ 14). When plaintiff inquired why the Borough was no longer advertising in the Journal, the Borough responded with a letter, signed by the mayor and six of the Borough's seven council members, dated July 17, 2018 (the "July 2018 Letter"). (Id. ¶¶ 15-16, 23). The July 2018 Letter provided the following explanation for the Borough ending its advertising relationship with plaintiff:

> This decision was arrived at through discussion of a number topics that we feel have been detrimental to the efforts and initiatives of the Borough, including articles and editorials published in the Press and Journal over the past year. The topics covered include the Elks Theater, National Night Out, Police discipline, local campaign coverage and the Press and Journal's attempts to help finance select campaigns, Borough ordinances affecting student housing, and the Borough's litigation against Suez and McNees, Wallace & Nurick. Through these disheartening and demoralizing instances of distasteful sensationalism, misrepresentation of information and statements, unfounded speculation, questionable sourcing and observable bias, we feel that the Press and Journal is not entirely committed to presenting the news of our community with an acceptable amount of impartiality or accuracy of facts.

(Doc. 1-2). The letter further stated that "[s]hould the Press and Journal demonstrate reliability to professionally and responsibly report on actions and statements of Borough Council and Management, as well critiquing us from a founded and balanced position, we will be happy to patron your newspaper again."[1] (Id.)

---

[1] Given the centrality of the July 2018 Letter in this litigation, the court has reproduced the foregoing portions of the letter without amendment to correct typographical or grammatical errors.

2

Before commencing litigation, plaintiff's legal representative attended a public Borough council meeting in September 2018. (Doc. 1 ¶ 34). At that meeting, plaintiff's attorney read from a letter addressed to the mayor and council members indicating that plaintiff believed the Borough's actions were unconstitutional infringements of its First Amendment rights. (Id. ¶ 35). The letter requested that the Borough "correct the unconstitutional action" it had taken and "enter into talks to remediate the [Borough's] wrongdoing." (Doc. 1-3 at 3). Plaintiff's attorney then provided the mayor and all council members present with a copy of the letter, which the mayor purportedly "ripped . . . in half and threw the pieces on the Council table." (Doc. 1 ¶¶ 37-38).

The following month, plaintiff filed the instant lawsuit seeking injunctive relief under 42 U.S.C. § 1983. Plaintiff accuses the Borough of the following violations of the First Amendment to the United States Constitution: viewpoint discrimination in contravention of the right to free speech and free press (Count I); content discrimination in violation of the right to free speech and free press (Count II); and violation of the right to freedom of association (Count III). The Borough moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b), claiming lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Due to outstanding factual issues underlying the Rule 12(b)(1) challenge, the court instructed the parties to complete their briefing only with respect to the Rule 12(b)(6) matter, which is now ripe for disposition.

**II. Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting

4

Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded.  Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief."  Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556.  A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678.

## III. Discussion

Section 1983 of Title 42 of the United States Code creates a private cause of action to redress constitutional wrongs committed by state officials.  42 U.S.C. § 1983.  The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law.  Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996).  To establish a Section 1983 claim, plaintiffs must prove a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law."  Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

Pursuant to Section 1983, plaintiff seeks to enjoin permanently certain actions that it claims amount to unconstitutional infringements of its First Amendment rights to free speech, free press, and freedom of association.  The

5

Borough's only challenge under Rule 12(b)(6) is that plaintiff—an independent contractor—lacks the requisite "pre-existing commercial relationship" necessary to maintain a First Amendment claim against the Borough.

Independent contractors who provide services to governmental entities enjoy certain protections under the First Amendment. O'Hare Truck Serv., Inc. v. City of Northlake, 518 U.S. 712, 725 (1996); Board of Cty. Comm'rs v. Umbehr, 518 U.S. 668, 673, 684-85 (1996). The extent of those protections, however, is limited. In Umbehr, the Supreme Court examined whether "the First Amendment protects independent contractors from the termination [or non-renewal] of at-will government contracts in retaliation for their exercise of freedom of speech." Umbehr, 518 U.S. at 671. The Court held that such protection exists but cabined its holding to independent contractors with a "pre-existing commercial relationship with the government[.]" Id. at 685-86. The Umbehr Court expressly left open the question of whether contractors who were merely "bidders or applicants for new government contracts" and thus unable to rely on a preexisting relationship can similarly avail themselves of the First Amendment's safeguards. Id. at 685.

In a related case decided the same day as Umbehr, the Supreme Court considered whether First Amendment rights held by government employees also applied to an "independent contractor, who, in retaliation for refusing to comply with demands for political support, . . . is removed from an official list of contractors authorized to perform public services." O'Hare, 518 U.S. at 714. In O'Hare, the local government allegedly removed an independent contractor, who had provided

towing services to the municipality for many years, from an official rotation list of towing-service companies in retaliation for the contractor's exercise of political association. Id. at 715-16. The Court held that these allegations stated an actionable claim for violation of the contractor's First Amendment rights. Id. at 720.

The gravamen of the Borough's argument is that plaintiff does not stand in a position similar to the plaintiffs in Umbehr and O'Hare and thus cannot pursue a First Amendment claim. According to the Borough, there must be a contract or some *guarantee* of "future business" to establish a preexisting commercial relationship. (See Doc. 25 at 3-9). The Borough contends that plaintiff had no "actual contract" that was terminated like in Umbehr, nor was plaintiff on an "officially designated rotation list" that would "assure[] additional government work" as in O'Hare. (Id. at 3). Plaintiff instead only had "discrete, individual transactions" with "no promise of future purchases," which the Borough maintains is insufficient to qualify for First Amendment protection. (Id. at 6).

We find the Borough's interpretation of Umbehr and O'Hare too narrow. The critical distinction set out in Umbehr was the independent contractor who had a "pre-existing commercial relationship" with a governmental entity versus mere "bidders or applicants for new government contracts" who had no such prior relationship. "Pre-existing commercial relationship," however, does not require factual circumstances identical to Umbehr or O'Hare, or, as the Borough argues, some guarantee of future purchases. We believe the concept is broad enough to include the instant situation, to wit: an independent contractor which has a

longstanding, ongoing business relationship with a governmental entity for services of a regular and similar nature, and, "based on that longstanding practice, had reason to believe [it] would continue." See O'Hare, 518 U.S. at 721.

The Third Circuit Court of Appeals' opinion in McClintock v. Eichelberger, 169 F.3d 812 (3d Cir. 1999), reinforces our decision. There, the court reviewed whether two independent contractors had preexisting commercial relationships with a local government such that they could maintain a First Amendment retaliation claim for being denied a contract on the basis of political association. Id. at 816-17. The Third Circuit found that the independent contractors did not have the requisite "pre-existing commercial relationship" with the governmental entity. Id. at 816.

In its rationale, the court first noted that in Umbehr and O'Hare, the retaliatory act "terminated an active ongoing independent contractor relationship for the supplying of governmental services." Id. It then contrasted that situation with the facts in the case before it where the independent contractors only had two prior discrete contracts—one in 1985 for promotion of a seatbelt campaign and one in 1992 relating to Olympic cycle trials—as well as a vendor-vendee relationship with one contractor from 1995 through 1997 for sale of promotional materials. Id. at 814, 816. The court emphasized that the contract in question, which the contractors claimed was unconstitutionally denied, was for an entirely new project concerning different subject matter that was *unrelated* to the contractors' prior business dealings with the governmental entity. Id. at 816. This distinction was integral to

the court's conclusion that, with respect to the denied contract, the case did not concern "the termination of a pre-existing commercial relationship with the government" but instead involved a "suit by a bidder or applicant for a new government contract who cannot rely on such a relationship." Id. (brackets omitted) (quoting Umbehr, 518 U.S. at 685).[2]

The facts as pled in the case *sub judice* are entirely distinguishable from those in McClintock. Plaintiff avers that it has maintained an active and ongoing business relationship with the Borough for over a century related to publishing legal notices and advertisements of public concern. In the preceding ten years alone, plaintiff alleges that the Borough placed no less than 207 such notices and advertisements in the Journal. Moreover, these are the exact same type of notices and advertisements that the Borough will no longer place, purportedly due to plaintiff's speech and association.

There is no formal contract alleged between the parties for these services, but an actual contract is not required. See generally O'Hare, 518 U.S. at 715-16; see Prisma Zona Exploratoria de Puerto Rico, Inc. v. Calderon, 162 F. Supp. 2d 1, 7 (D.P.R. 2001). We likewise reject the Borough's argument that some "future business" or "purchase" must be guaranteed. After all, in Umbehr, the independent contractor had no guarantee of future business—the municipalities

---

[2] Other circuit courts of appeal have likewise found that similarity—or lack thereof—in the contracts' subject matter is an important factor in the "pre-existing commercial relationship" analysis. See Mangieri v. DCH Healthcare Auth., 304 F.3d 1072, 1076 (11th Cir. 2002) (distinguishing McClintock); Heritage Constructors, Inc. v. City of Greenwood, 545 F.3d 599, 601-02 (8th Cir. 2008).

9

could opt out of the annual contract and the county could choose not to renew it. Umbehr, 518 U.S. at 671. The crux of the holding in Umbehr was that the independent contractor's annual trash-hauling agreement—its preexisting commercial relationship of six years—could not be ended (by nonrenewal) for *unconstitutional* reasons. Id. at 674, 685; see also O'Hare, 518 U.S. at 720-21, 725. Whether there is a "pre-existing commercial relationship" is, quite necessarily, a retrospective analysis, not a prospective one.

Contrary to the Borough's concerns, our holding today does not expand First Amendment protections "beyond the Umbehr and O'Hare boundaries." McClintock, 169 F.3d at 817. We do not take up the question of whether an applicant or bidder for a new government contract with no preexisting relationship can bring a First Amendment claim.[3] We simply find that plaintiff falls into the Umbehr and O'Hare category of having a "pre-existing" or ongoing commercial relationship with the Borough. As the O'Hare Court explained, "Government officials may indeed terminate at-will relationships, unmodified by any legal constraints, without cause; but it does not follow that this discretion can be exercised to impose conditions on expressing, or not expressing, specific political views." O'Hare, 518 U.S. at 725 (citing Perry v. Sindermann, 408 U.S. 593, 597 (1972)). We thus hold that plaintiff has plausibly alleged that it was providing "ongoing services"—rather than being an applicant or bidder for a new government

---

[3] That task, the Third Circuit has admonished, should be left to the Supreme Court. McClintock, 169 F.3d at 817; Bartley v. Taylor, 25 F. Supp. 3d 521, 534 n.7 (M.D. Pa. 2014).

contract—when the Borough purportedly terminated the business relationship in retaliation for plaintiff's First Amendment activities. See McClintock, 169 F.3d at 816. Plaintiff therefore has stated a First Amendment claim.

## IV. Conclusion

We will deny the Borough's motion (Doc. 12) to dismiss to the extent that we find that plaintiff has stated a claim, pursuant to 42 U.S.C. § 1983, upon which relief can be granted. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: December 13, 2018